IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEREMIAH SPARROW<br>1304 S. Hanover Street<br>Baltimore, MD 21232<br><br>   *Plaintiff,*<br><br>  v.<br><br>BEATBOX BEVERAGES, LLC<br>6901 North Lamar<br>Suite 134<br>Austin, TX 78752<br><br>   *Defendant.* | Case No. 18-2680 |

## COMPLAINT

Plaintiff Jeremiah Sparrow (hereinafter "Plaintiff"), by and through undersigned counsel, for his Complaint against BeatBox Beverages, LLC (hereinafter "Defendant" or "BeatBox"), seeking damages, hereby alleges as follows:

### NATURE OF THE CASE

1 This action is an action for damages, seeking legal remedy for the Defendant's various violations of consumer protection laws, its tortious acts and omissions, as well as breaches of contract.

### PARTIES

2 Plaintiff Sparrow is a resident of the State of Maryland.

3 Defendant BeatBox Beverages, LLC, is a corporation organized and existing under the laws of the State of Delaware, conducting extensive business throughout the United States, including the State of Maryland, and having a principal place of business in Austin, Texas, and its registered agent as Justin Fenchel, 6901 North Lamar, Suite 134, Austin, Texas.

1

## JURISDICTION AND VENUE

4      Plaintiff brings this action against Defendant in the District Court for the District of Maryland pursuant to subject matter jurisdiction under 28 U.S.C. § 1332, the Parties having residence in different States and the amount in controversy exceeds $100,000.

5      This Court may exercise personal jurisdiction over the Defendant who has availed itself of the jurisdiction of this Court through acts and omissions.

6      The Defendant regularly conducts business in the State of Maryland, wholesaling alcoholic beverages to wholesalers and retailers in this State.

7      Defendant has further availed itself to this jurisdiction through hiring Plaintiff to work in this region, including throughout the State of Maryland.

8      Venue in the Northern District is proper as the Plaintiff resides here, and the Defendant's business in the State was formerly conducted, through Plaintiff, based in Baltimore.

## GENERAL ALLEGATIONS

9      Plaintiff is a professional wholesale alcohol marketer, with years of experience successfully bringing new products into the regional market.

10      In or around February of 2017, Plaintiff had a discussion about BeatBox with his former boss, who offered to make an introduction.

11      The next day, on approximately February 9th, 2017, Plaintiff had a Google Hangout call with the founders of BeatBox (Justin Fenchel, Aimy Steadman, and Brad Schultz).

12      That day, Plaintiff's then-current employer, Deep Eddy, promoted him and offered to make him the Northeast Region manager, at a salary of $135,000, plus a 30% uncapped bonus, a vested 401k, a company car, and full additional benefits.

13      BeatBox then made an offer to make Plaintiff the East Coast manager for its products. Mr. Sparrow asked for a 5% equity stake in the company.

14      BeatBox sent Mr. Sparrow an offer letter via e-mail, but that offer was rejected by Mr. Sparrow, who continued negotiating with Mr. Fenchel of BeatBox via e-mail.

15      Mr. Sparrow made BeatBox aware of the Deep Eddy offer, who informed BeatBox that

he would be giving up over $100,000 per year if he accepted BeatBox's initial offer.

16    On March 1st, 2017, Plaintiff responded to Mr. Fenchel's e-mail regarding terms, asking follow-up questions.

17    Mr. Fenchel responded as follows, with inline bolded comments to Plaintiff's questions:

- The 1.5% becomes fully vested at 20,000 cases or upon sale of the company (whichever is first)
  - **The 0.5% granted at start date, additional .5% at 10,000 cases (vested over an additional 2 years), and the final 0.5% at 20,000 cases (vested over an additional two years ). All 1.5% vests in the event of a sale before vesting period is complete.**
- The 1.5% is a fixed % of the selling price of the company and cannot be diluted
  - **As we discussed anti-dilution provisions are not doable. However we will commit to sitting down post the closing of the Series A and discussing management bonus opportunities before the next raise, or a separate payout structure upon exit.**
- The bonus structure will stay as previously described. $1.25 per case **at every 5,000 cases, $6,250)** (until **15,000 cases** when it becomes $1.30) **Every 10k cases will be an additional $12,500 bonus if the first 10,000 cases are achieved within 18 months. . We discussed removing the 25% and 30% uncapped. The bonus structure will be as laid out here with my changes to your paragraph.**
- Chain sales: only the first 3 months of new chain authorization sales would be backed out of my sales. For example- if you were to get the Total Wine auth, we would back out the initial shipments. After that, since I would be working with the stores to expand on activity, these would count toward sales. We have limited chains in the area but I always have success expanding on national programs.
  - **Good to go here**
- After 20,000 cases, we would look at and come up with new raise hurdles (since there is nothing listed again until we reach 200,000 9-l cases as a company.
  - **Good to go here.**

18    The same evening, Mr. Sparrow asked Mr. Fenchel if the BeatBox offer letter needed to be revised, to which Mr. Fenchel stated:

> Let's gooo baby!!
>
> You can just print that out and staple it. BIG things ahead my man.
> On Wed, Mar 1, 2017 at 5:04 PM Jeremiah <_____> wrote:
> Looks like we are good! Do you want to add this in to the offer letter or should I just print it out and staple to the other one?
> I'll make the call in the am, see how they want to proceed and reach back out.
> I'm excited to help make this a household name!

19    Based on this agreement, and in reliance thereof, Plaintiff resigned from his position at Deep Eddy and declined their promotion offer.

20    On March 15th, 2017, Plaintiff began working for Defendant.

21    Plaintiff was able, during his tenure at BeatBox, to expand the product distribution in Maryland, Massachusetts, Rhode Island, the District of Columbia, West Virginia, Florida, New Jersey,

and other states, to assist other regional marketers in expanding their product distribution, to directly sell some 5,466 cases of BeatBox product, and to cover up for various mistakes made by the Defendant (e.g., repeatedly sending expired or expiring product to distributors and customers).

22      However, BeatBox executives told Plaintiff, while discussing other hires, that the company had a philosophy of "hiring slow and firing quick," and otherwise would use candidates to profit the company and fire them before their bonuses became vested.

23      Thus, while discussing a potential Florida hire on a call with owner Justin Fenchel and Vice President Jeff Chassner, they both stated that BeatBox should try to get the candidate on board with a low salary, and that "[i]f he performs and gets too expensive to pay, we can let him go. At least we got a year out of him at a good price," as stated by Fenchel.

24      At one point in his tenure, Plaintiff's supervisor offered him an additional bonus on top of those he was already earning or earned, citing his excellent work with the company. Plaintiff decline.

25      On February 26th, 2018, Plaintiff was informed by Mr. Fenchel that his employment was being terminated, effective his one-year anniversary with the company, not for performance but for "strategic reasons."

26      Defendant refused to pay Plaintiff the bonuses that he had earned, and to give him the equity that was part of his agreement with the Company; this lawsuit follows.

**COUNT I – BREACH OF CONTRACT (Compensatory Damages)**

27      Plaintiff incorporates the foregoing allegations in full into this Count.

28      Plaintiff was offered and accepted an employment agreement with Defendant under terms that included 0.5% equity with the Defendant, and a cash bonus structure.

29      Defendant has refused to pay that bonus(es) earned by Plaintiff, and to honor the equity agreement that vested upon hiring.

30      Those breaches have harmed Plaintiff, as he lost some $6,500 in cash bonuses, and lost equity in BeatBox, which he believes to be worth at least $200,000.

31      Defendant therefore must pay to Plaintiff at least $206,500.00, or an amount to be

determined as appropriate compensatory damages at trial.

## COUNT II – BREACH OF CONTRACT (Specific Performance)

32      Plaintiff incorporates the foregoing allegations in full into this Count.

33      Plaintiff was offered and accepted an employment agreement with Defendant under terms that included 0.5% equity with the Defendant, and a cash bonus structure.

34      Defendant has refused to pay that bonus(es) earned by Plaintiff, and to honor the equity agreement that vested upon hiring.

35      In addition to compensatory damages under Count I, Plaintiff requests that this Court order Defendant to tender his vested equity in BeatBox, e.g., .5% percent of the company's stock.

## COUNT III – PROMISSORY ESTOPPEL

36      Plaintiff incorporates the foregoing allegations in full into this Count.

37      Defendant made representations to Plaintiff as to employment opportunity with BeatBox, including, but not limited to, vested equity, salary, and bonuses.

38      Defendant was further aware that Plaintiff had gainful employment at the time of making those representations, and in fact accepting the Defendant's offer would cause him to forego some $100,000 per year for a time, until BeatBox ramped up into the market.

39      Those representations were intentional in nature, and both were made with the intent for Plaintiff to rely on them and of a nature that a reasonable person would rely on them.

40      Plaintiff relied on those representations.

41      However, Defendant denied Plaintiff his equity and bonuses with the Defendant, and Plaintiff was otherwise harmed by lost opportunities.

42      Plaintiff demands compensation in the amount of at least $250,000, or an amount to be determined at trial.

43      Given the apparent malicious intent of Defendant in making the representation to Plaintiff, Plaintiff requests punitive damages.

## COUNT IV– NEGLIGENT MISREPRESENTATION

44   Plaintiff incorporates the foregoing allegations in full into this Count.

45   Defendant negligently made false representations to Plaintiff as to employment opportunity with BeatBox, including, but not limited to, vested equity, salary, and bonuses.

46   Defendant was further aware that Plaintiff had gainful employment at the time of making those representations, and in fact accepting the Defendant's offer would cause him to forego some $100,000 per year for a time, until BeatBox ramped up into the market.

47   Those false representations were made intentionally, and both were made with the intent for Plaintiff to rely on them and of a nature that a reasonable person would rely on them.

48   Plaintiff relied on those representations.

49   However, Defendant denied Plaintiff his equity and bonuses with the Defendant, and Plaintiff was otherwise harmed by lost opportunities.

50   Plaintiff demands compensation in the amount of at least $250,000, or an amount to be determined at trial.

## COUNT V – INTENTIONAL MISREPRESENTATION

51   Plaintiff incorporates the foregoing allegations in full into this Count.

52   Defendant made false representations to Plaintiff as to employment opportunity with BeatBox, including, but not limited to, vested equity, salary, and bonuses.

53   Those representations were specifically made by Justin Fenchel on March 1st, 2017, via e-mail, but may also have been made at other times around the time of Plaintiff being made offer of employment with BeatBox and after his employ began.

54   Defendant was further aware that Plaintiff had gainful employment at the time of making those representations, and in fact accepting the Defendant's offer would cause him to forego some $100,000 per year for a time, until BeatBox ramped up into the market.

55   Those representations were intentional in nature, and both were made with the intent for Plaintiff to rely on them and of a nature that a reasonable person would rely on them.

56 Defendant has in fact admitted to Plaintiff that it uses illusory or false promises of bonuses and equity to seduce candidates to come work for the company at less-than-market value.

57 Plaintiff relied on those false representations.

58 However, Defendant denied Plaintiff his equity and bonuses with the Defendant, and Plaintiff was otherwise harmed by lost opportunities.

59 Plaintiff demands compensation in the amount of at least $250,000, or an amount to be determined at trial.

60 Given the apparent malicious intent of Defendant in making the representation to Plaintiff, Plaintiff requests punitive damages.

## JURY DEMAND

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the Court:

- Award monetary damages to Plaintiff to the extent permitted by law, but no less than $206,500.00; and or

- Award Plaintiff specific performance in tender of his vested equity with the company; and or

- Award to Plaintiff such punitive damages as the Court considers just; and

- Grant such other and further relief as the Court deems just and proper.

DATED: August 29th, 2018

Respectfully submitted,

_____
Joshua G. Whitaker, Bar Number 16457
ADELPHI, LLP
1936 Eastern Avenue
Baltimore MD 21231
Voice/Fax: 888-367-0383
whitaker@adelphilaw.com

*Attorney for Plaintiff*